NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1469, -1492

NISSEI SANGYO AMERICA, LTD.
(now Hitachi High Technologies America, Inc.),

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant,

and

MICRON TECHNOLOGY, INC.,

Defendant-Appellant.

_____

DECIDED: July 1, 2005

_____

Before NEWMAN, MAYER, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

The government appeals the final decision of the United States Court of
International Trade granting summary judgment to Nissei Sangyo America, Ltd. ("the
appellee") by finding that the instructions to liquidate appellee's entries at the cash
deposit rate were arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with law. See Nissei Sangyo Am., Ltd. v. United States, No. 00-00113 (Ct.
Int'l Trade Aug. 18, 2003) ("Nissei Sangyo"). The Court of International Trade held that
the Department of Commerce ("Commerce") had deviated from its past practice of
liquidating entries at the manufacturer's review rate when it ordered liquidation of

appellee's entries at the cash deposit rate. Because the arguments in favor of the appellee are foreclosed by the decisions in Consolidated Bearings Co. v. United States, 348 F.3d 997 (Fed. Cir. 2003) ("Consolidated Bearings I"), and Consolidated Bearings Co. v. United States, No. 04-1556 (Fed. Cir. June 21, 2005) ("Consolidated Bearings II"), which collectively held that an unreviewed reseller is not statutorily entitled to the manufacturer's review rate and that Commerce in the past consistently liquidated unreviewed entries from unrelated resellers at the cash deposit rate, we reverse the decision of the Court of International Trade.

I

The appellee is an importer of Dynamic Random Access Memory semiconductors of one megabit or more ("DRAMs"). The appellee purchased its merchandise for import from a reseller not associated with the manufacturer of the DRAMs. The manufacturer of the DRAMs imported by the appellee was LG Semicon Co., Ltd. ("LG"), formerly Goldstar Electron Co., Ltd., which was under review in antidumping proceedings. An antidumping duty order was in effect when the appellee imported the subject DRAMs. See Antidumping Duty Order and Amended Final Determination: Dynamic Random Access Memory Semiconductors of One Megabit and Above from the Republic of Korea, 58 Fed. Reg. 27,520 (May 10, 1993). Upon entry, the appellee was required to post cash deposits at the manufacturer's rate as estimated antidumping duties.

Administrative review of DRAMs made by multiple manufacturers that were imported into the United States from October 29, 1992 to April 30, 1994 ("POR 1") was initiated. Initiation of Antidumping and Countervailing Duty Administrative Reviews and

Request for Revocation in Part, 59 Fed. Reg. 30,770 (June 15, 1994). In this review, the dumping margin for LG was calculated to be 0.00%. Dynamic Random Access Memory Semiconductors of One Megabit or Above From the Republic of Korea; Final Results of Antidumping Duty Administrative Review, 61 Fed. Reg. 20,216, 20,222 (May 6, 1996). The appellee did not participate in this administrative review.

Beginning on June 15, 1995, a second period of review ("POR 2") from May 1, 1994 to April 30, 1995, was initiated. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 60 Fed. Reg. 31,447 (June 15, 1995). For this period, the dumping margin for LG was determined to be de minimis at 0.01%. Dynamic Random Access Memory Semiconductors of One Megabit or Above From the Republic of Korea; Final Results of Antidumping Duty Administrative Review, 62 Fed. Reg. 965, 968 (Jan. 7, 1997). The appellee also did not participate in this review.

Micron Technology, Inc. ("Micron"), a domestic producer of DRAMs, sued in opposition to the rates determined for LG in POR 1 and POR 2. The Court of International Trade and this court sustained the rates determined for LG. See Micron Tech., Inc. v. United States, 243 F.3d 1301 (Fed. Cir. 2001); Micron Tech., Inc. v. United States, 44 F. Supp. 2d 216 (Ct. Int'l Trade 1999); Micron Tech., Inc. v. United States, 40 F. Supp. 2d 481 (Ct. Int'l Trade 1999). Commerce subsequently issued liquidation instructions which lifted suspension of the POR 1 and POR 2 entries and directed Customs to liquidate appellee's entries at the cash deposit rate. Appellee's entries were not given the benefit of the de minimis dumping rate determined for LG in the administrative review.

The appellee appealed to the Court of International Trade, which found that the liquidation instructions issued by Commerce were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and entered summary judgment in favor of the appellee. When it issued its opinion, the Court of International Trade did not have the benefit of this court's decision in either Consolidated Bearings I or Consolidated Bearings II.

The government appeals the decision of the Court of International Trade arguing that Commerce had a consistent past practice of liquidating unreviewed resellers at the cash deposit rate. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2000).

II

A decision of the Court of International Trade reviewing an antidumping decision by Commerce is reviewed "anew" by this court by reapplying the same standard of review applied by the Court of International Trade when it reviewed the decision by Commerce. Consolidated Bearings I, 348 F.3d at 1004; Mitsubishi Heavy Indus., Ltd. v. United States, 275 F.3d 1056, 1060 (Fed. Cir. 2001). Therefore, Commerce's liquidation instructions should be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A) (2000); Consolidated Bearings I, 348 F.3d at 1004.

III

This case presents the same issue as Consolidated Bearings II, which issued from this court on June 21, 2005. In the present case, the Court of International Trade found that the liquidation instructions for appellee's entries were an arbitrary deviation from past practice because the instructions suffered the same problems as those in

Consolidated Bearings Co. v. United States, 166 F. Supp. 2d 580 (Ct. Int'l Trade 2001). See Nissei Sangyo, slip op. at 15. We have since reversed Consolidated Bearings, 166 F. Supp. 2d 580, in Consolidated Bearings I, and to the extent that the Court of International Trade decision in this case relies on its opinion in that case, those arguments are no longer sound. Because a "reseller" rate determination was never requested by these importers or their suppliers, Consolidated Bearings I directs that the appellee does not have a statutory right to liquidation at the manufacturer's review rate. See 348 F.3d at 1006.

What remains is whether Commerce deviated arbitrarily from a past consistent practice when it liquidated appellee's unreviewed entries at the cash deposit rate. This court has recently addressed this issue and held that Commerce "has consistently liquidated unreviewed entries from unrelated resellers at the cash deposit rate." Consolidated Bearings II, slip op. at 11. Consolidated Bearings II directly applies to the facts of appellee's case. In particular, we note that the evidence relied upon by both Consolidated Bearings and Commerce to support their positions in the Consolidated Bearings II appeal is substantially the same as that offered by the respective parties in the present case. Therefore, for the reasons set forth in Consolidated Bearings II, the decision of the Court of International Trade is reversed.